NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JULY, 1876.

## SENIOR v. ACKERMAN.

### In the matter of the Estate of FRANCIS C. SENIOR, deceased.

The Surrogate has power, on proper cause shown, to remove an executor and guardian or one of several co-executors and guardians, if his circumstances are so precarious as not to afford adequate security for his due administration of the estate.

The fact that the testator knew the circumstances of the executor and guardian, is not a sufficient reason why the court should not exercise this power when necessary for the protection of the interests of beneficiaries under the will.

The proceeds of a life policy taken out by the testator, and by its terms payable to his children, are not assets of the estate.

But, the children being minors, the custody of such proceeds belong to testamentary guardians appointed by the testator.

Such fund should therefore be considered with the assets, in fixing the amount of security to be required from the executor and guardian as an alternative of ordering his removal.

The amount of security proper to be required from one of several co-executors, administrators or guardians is to be fixed in view of the actual amount of the fund and cannot be reduced by considering any arrangement between him and his colleagues by which they assume the exclusive control and responsibility of the trust.

THIS was a petition by Mary Emma Senior, one of the residuary legatees of the will of Francis C. Senior, deceased, to remove Jacob H. Ackermann, as executor and guardian.

The petition set forth that the will was proved June 26th, 1875, and that letters testamentary were issued to W. H. Hawks, Jacob H. Ackermann, and Oscar Frisbie, as executors and guardians of the petitioner, and " that the circumstances of Ackermann are so precarious, as not to afford sufficient security for his due administration of the estate."

That the assets that came into the hands of the executors exceeded seventeen thousand dollars.

That said Ackermann failed in his business, and became insolvent.

The executors named answered the petition that it was the wish and request of the testator before his death that in the event of his death, his children should live with the said Ackermann, but that they were living with Mrs. Lord, the testator's sister, who instigated their proceedings, that the executors named in the will were intimate friends of the deceased, and denied that his circumstance were precarious, &c., and alleged that the interest of the petitioner and the whole estate were outside and removed from the custody and control of said executor, and were not affected by his business affairs, or circumstances. That by the advice of Mr. Frisbie, one of the executors, and for many years counsel of the testator, the assets were turned over to the executor Hawks, and the entire management of the estate placed in his hands, subject to advise with the others; and that Ackermann has never had control over a dollar of the estate; and that the testator was well acquainted with Ackermann's circumstances when he made the will. That the testator left an insurance policy on his life, for the sum of $4,263, four thousand of which had been safely invested, and that the inventory, including the $4,000, was over $8,000. That about $3,000 had been paid for debts, and legacies. That the business of the testator, carried on by the executor, Hawks, had yielded a profit of about $2,500; and that the estate, independent of the $4,000 did not exceed $7,000.

On this answer a reference of the whole matter was ordered. The referee in his report stated among other things that the executor, Hawks, had the exclusive control of the estate, and that the executors were appointed the guardians of the persons of the two infants, and not of their estate.

That the $4,000 proceeds of the life policy which was taken by testator for the benefit of the daughters, and

payable to them, did not belong to the executors as such or as guardians, and should not be reckoned as part of the estate, and that the amount of assets in the hands of the executors, over and above the liabilities, was $7,605.94.

Upon these facts the referee suggested that if deemed necessary by the Surrogate, the said executor, Ackermann, be required to furnish security to the amount of $2,000 to $2,500, which would be ample security. This proceeding was for the purpose of confirming the report of the referee, exceptions thereto having been filed by the petitioner.

The testator's will, after giving certain specific legacies, bequeathed the residue of his estate to his executors in trust to convert the same into cash, and if they thought best, invest the same, and pay the income to his two daughters, Mary E. and Elida F. until they arrive at the age of twenty-one years, respectively, then to be equally divided between them, if in the judgment of the said trustees, they were capable of taking care of, and managing the same; but if in their opinion they should not be, the testator directed his trustees, to keep the same invested, and pay the proceeds to them, and also authorized his trustees to continue his business at their option: and appointed the executors, guardians of said children.

O. S. ACKLEY, *for the executor.*

JOHNSON & CANTINE, *for petitioner.*

THE SURROGATE.—I am willing to pay all due respect to the maxim of the law, " whom the testator will trust so will the law;" nevertheless, when the interests of other parties are involved, they have the right to the protection of this court, though the testator may have been improvident in his selection of an executor. The language of section 8 (2 *Statutes at Large*, 73) is, "that if a person is appointed executor, and has become incompetent by

law to serve as such, or his circumstances are so precarious as not to afford adequate security for his due administration of the estate, the Surrogate may require such person to give a bond with surety like those required by law for the administrator;" and in case of failure, he may supersede the letters.

By chapter 359, of the laws of 1870, the Surrogate is authorized to revoke the letters, and discharge administrators, collectors, testamentary trustees, or guardians, from their trust, upon such terms and conditions as in his judgment may be proper for the security of the estate. It is clear, therefore, that the Surrogate has the power, on proper cause shown, to remove the executor and guardian in this matter.

The counsel for the executor and guardian sought to be removed, or of whom security is devised, claims that the Surrogate has no power to interfere with respect to the $4,000, proceeds of the life policy, because it is payable to the infants and not therefore an asset of the estate. That it is not an asset of the estate I think quite clear, but by force of the testamentary appointment as guardian, it came into the hands of such guardian, and he is responsible for it. Section 3 (2 *Statutes at Large,* 157) provides that " as such guardian he shall take the custody and management of the personal estate of such minor, and the profits of his real estate," &c.

The counsel also seems to suppose with the referee, that if security shall be required, it should be upon the basis of the amount of assets in hand, over and above the debts. This is clearly erroneous; for if the fund is in his hand, security should be given to ensure its proper application, both to the payment of debts, and legacies; and by section 20 (of 2 *Statutes at Large,* 74), it is provided that the Surrogate shall require security by way of bond with sureties like those required of administrators; and by section 42 (2 *Statutes at Large,* 78), the

penalty of such bond shall not be less than twice the value of the personal estate, of which the deceased died possessed, and substantially the same security should be required of the guardian (2 *Statutes at Large*, 157, § 8).

The fact that there has been a mutual arrangement between the executors and guardians, that executor Hawks shall have sole control of the estate, under advice of the other executors, does not exclude the executor Ackermann from resuming control as executor and guardian at any time, by virtue of his appointment as executor and guardian, and he is charged with that responsibility.

The amount of the assets appears to be over $9,000 in the hands of the executors as such, and the amount of funds in their hands, as guardians, seems to be about $4,000.

Under these circumstances, I am of the opinion, that the executor named should give security by bond, in the penal sum of nineteen thousand dollars, and as guardian, by bond in the penalty of eight thousand dollars, and in the event of his failure to do so, let his letters be revoked.

Order accordingly.